FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>LESLIE D. FISHER,<br><br>  Defendant. | 8:03CR566<br><br>SENTENCING MEMORANDUM |

Defendant Leslie Fisher is before the court on remand from the Eighth Circuit Court of Appeals for resentencing in accordance with *United States v. Booker,* 543 U.S. 220 (2005). Filing No. 169. This sentencing memorandum supplements findings made on the record at a sentencing hearing on August 4, 2006.

I.  BACKGROUND

  A.  2004 Proceedings

Fisher and co-defendants Scott Goodman and Randy Evans were charged in this case with conspiracy to manufacture methamphetamine, in violation of 18 U.S.C. § 21 U.S.C. § 841(a)(1) and 846, and possession of pseudoephedrine, in violation of 21 U.S.C. § 841(c)(1). Filing No. 1, Indictment at 1. No drug quantity was charged in the Indictment. Fisher and her then-boyfriend, Scott Goodman, had been arrested for attempting to shoplift pseudoephedrine at a local grocery store on November 12, 2003. At the time of her arrest, Fisher was on supervised release for a previous conviction in this court. *See United States v. Fisher,* No: 8: 02-CR-268, Filing No. 100, Judgment. She had been sentenced in that action to time served and three years of supervised release based on a government motion for downward departure for substantial assistance under U.S.S.G. § 5K1.1. *Id.* A petition

to revoke Fisher's supervised release was filed in the earlier case in connection with the shoplifting incident. *Id.*, Filing No. 115. Co-defendant Randy Evans was arrested several weeks later in possession of pseudoephedrine.

Fisher, Goodman and Evans all entered pleas of guilty to both counts of the Indictment. Fisher and Goodman pled guilty on June 24, 2004, the same day that the Supreme Court issued its opinion in *Blakely v. Washington,* 542 U.S. 296 (2004). There were no plea agreements involved. The factual basis for Fisher's plea was her admission that she "shoplifted pseudoephedrine tablets as alleged in Count II of the Indictment." Filing No. 89, Petition to Enter a Plea of Guilty at 14. At the plea colloquy, she made essentially the same admission. Filing No. 90, Transcript of Guilty Plea Proceedings, June 24, 2004 ("2004 Plea Hr'g Tr.") at 17. During the plea hearing, counsel for the government stated that "the government's position is that the weight attributable to her will be determined at the sentencing itself." *Id.* at 3. Defense counsel concurred that the sentence would depend "on the quantity that is attributable to [defendant]." *Id.* at 10.

Randy Evans had earlier entered a plea of guilty pursuant to a plea agreement under Fed. R. Civ. P. 11(c)(1)(C). *See* Filing No. 85, Petition; 78, Plea agreement ("Evans Plea Agr."). The parties agreed that he should be held responsible for at least 10 grams, but less than 40 grams of pseudoephedrine and that his base offense level would be 26. Evans Plea Agr. at 4. The government further agreed to move for a three-level reduction for acceptance of responsibility and stipulated that Evans should be granted a two-level reduction as a minor participant in the crime. *Id.* at 1. Also, the agreement was a "cooperation agreement" whereby Evans agreed to cooperate with the government in the investigation of other persons and the government agreed to consider the cooperation in determining, at its sole discretion, whether to file a motion for reduction of sentence for

substantial assistance. *Id.* at 2-3. The court accepted the defendants' pleas, but deferred sentencing pending review of a presentence investigation report ("PSR") prepared by the United States Office of Probation ("the probation office"). Filing No. 93.

The probation office prepared PSRs for all three defendants, calculating defendants' sentencing ranges under the United States Sentencing Guidelines ("Guidelines"). See Filing Nos. 121, Leslie Fisher Second Revised PSR ("Fisher PSR") (sealed); 122, Scott Goodman PSR ("Goodman PSR") (sealed); & 107, Randy Evans Revised PSR ("Evans PSR") (sealed). In the PSRs, the probation office related the facts underlying the offense conduct based on the prosecutor's version of events. *See, e.g.*, Fisher PSR at 5. The drug quantity attributable to each defendant was also calculated based on the government's version of events. *See id.* at 6. The reported facts show Fisher told police that she had been offered $100 to purchase or steal the pseudoephedrine. *Id.* at 5. The PSR further relates that 19 grams of pseudoephedrine was found in co-defendant Scott Goodman's vehicle. *Id.* A weapon was also found in the car. *Id.* Co-defendant Randy Evans was arrested three weeks later and told police and prosecutors that he had supplied pseudoephedrine to both Fisher and Goodman in the past. *Id.* at 6.

The calculations and recommendations in the PSRs were based on review of the police reports, investigative reports and telephone conversations with police investigators and prosecutors. *See, e.g., id.* at 5-6. These reports and statements relied heavily on the statements of Randy Evans. None of the defendants submitted a defendant's version of events.[1] Fisher PSR at 6; Goodman PSR at 5; Evans PSR at 6.

---

[1] In this district, on advice of counsel, defendants rarely submit to interviews with, or provide information to, the probation office. This is because they risk incriminating themselves or losing the government's recommendation of an adjustment for acceptance of responsibility.

Based on those facts, the probation office determined that Fisher should be held responsible for 76.2 grams of pseudoephedrine (converted as equivalent to 42 grams of actual methamphetamine), establishing a base offense level of 30.[2]  After subtraction of three points for acceptance of responsibility under U.S.S.G. § 3E1.1, Fisher's total offense level was 27.  Fisher was assessed 4 criminal history points under U.S.S.G. § 4A1.1(c) for offenses such as shoplifting, attempted possession of a controlled substance, and conspiracy to possess pseudoephedrine.  Two additional points were assessed under U.S.S.G. § 4A1.1(d) for commission of the offense while on supervised release for another conviction.  Fisher's criminal history category was III.  Her resulting sentencing range, at total offense level 27 and criminal history category III, was 87-108 months.

In Goodman's PSR, the probation office found that Goodman should also be held responsible for 42.14 grams of actual methamphetamine and determined that the facts supported a two-level enhancement for possession of a dangerous weapon.  Goodman PSR at 8.  No role in the offense adjustment, upward or downward, was recommended in the PSR.  *Id.* at 7.  The probation office noted that the government would not move for an additional adjustment under U.S.S.G. § 3E1.1(b) and accordingly assessed a two-level, instead of a three-level, adjustment for acceptance of responsibility.  *Id.* at 8.  Goodman's sentencing range, at total offense level 30 and criminal history category I, was 97 to 121 months.

The probation office found Randy Evans responsible for 32 grams of actual methamphetamine, resulting in a base offense level of 28.  Evans PSR at 7.  A three-level

---

[2]The amount of pseudoephedrine was calculated as follows:  984 pseudoephedrine tablets (29.52 grams) in Fisher's and Scott Goodman's possession when they were arrested on November 12, 2003; 960 pseudoephedrine tablets (28.8 grams) in the possession of Randy Evans when he was arrested on December 8, 2003; and 600 pseudoephedrine tablets (18 grams) that Randy Evans admitted to obtaining on a prior occasions for Goodman and Fisher.  Fisher PSR at 6.

adjustment for acceptance of responsibility was applied. *Id.* at 8. The probation office found, however, that the facts would not support a two-level reduction for minor role in the offense. *Id.* at 7. Evans's resulting sentencing range was 70 to 87 months, based on offense level 25 at criminal history category III. *Id.* at 18.

At the first sentencing hearing, Fisher objected, under *Blakely*, to the PSR's quantity determination. Filing No. 145, Transcript of Guilty Plea and Sentencing Proceedings ("Sent. Hr'g Tr.") at 23-24. She also objected to the calculation of her criminal history calculation and to the failure of the PSR to provide either a two-level or three-level adjustment for her minor or minimal role. *Id.* at 23-24; *see also* Filing Nos. 96 & 97, Objections to PSR. Fisher did not present any evidence with respect to her role in the offense. Sent. Hr'g Tr. at 24.

The government objected to the PSR's failure to apply an upward adjustment for being a leader or organizer of the enterprise and its failure to apply a two-level enhancement for possession of a weapon in connection with the offense. Sent. Hr'g Tr. at 24, 37. In connection with its position, the government made a record that if *Blakely* had not been applied to the case, it would have presented evidence to show that Fisher was responsible for a quantity of at least 148.32 grams of pseudoephedrine. Sent. Hr'g Tr. at 26. That evidence would have been based on the testimony of police officers and Randy Evans. *Id.* at 26. In addition to the 76 grams of pseudoephedrine found in the possession of the three defendants at the time of their arrests, and the additional 18 grams that Randy Evans told police he had acquired for Fisher and Goodman, Evans's testimony would have attributed responsibility for an additional 118.8 grams based on Evans's proffer to the government that he had purchased 600 tablets of pseudoephedrine for Fisher and Goodman on four or five occasions. *Id.* at 26-28.

Further, the government urged that Goodman's possession of the weapon should be imputed to Fisher since both Fisher and Goodman used the vehicle while obtaining pseudoephedrine. *Id.* at 28. The government also contended that Randy Evans would testify that on prior occasions when he had purchased pseudoephedrine pills for the other two defendants, Goodman had attempted to intimidate him with the gun. *Id.* The government also represented that Evans would testify that he purchased pills for both Goodman and Fisher, both of them gave him money to buy the pills, he used Fisher's car to obtain the pills, and Goodman told him "how to dress, told him to wear a suit, buy Kleenex with the cold medicine, not to raise suspicions." *Id.* at 28-29. Based on those representations, the government contended that both Fisher's and Goodman's base offense level should have been 32 and should have been increased for each defendant by two levels for the weapon and by two levels for their roles in the offense, resulting in adjusted offense levels of 36 for each defendant.[3]

The court sentenced Fisher for her violation of supervised release in the other case and for her offense in the present case at the same time. The court sentenced Fisher under its interpretation of *Blakely* at the time, finding that "under *Blakely*, Fisher [could] be held responsible only for the minimum amount criminalized under 21 U.S.C. § 841(a) and U.S.S.G. § 2D1.1" since no additional amount had been charged in the Indictment and either admitted or proved beyond a reasonable doubt to a jury. Filing No. 118, Order at 7; *see United States v. Terrell*, — F. Supp. —, 2004 WL 1661018 (D. Neb. July 22, 2004). The court overruled both parties' objections to Fisher's PSR. *Id.* at 25-26. Accordingly, the court found that Fisher's Guidelines base offense level was 12, minus 2 for acceptance of

---

[3]At their respective criminal history categories, Fisher's sentencing range would have been 235 to 293 months (roughly, nineteen-and-a-half to twenty-four-and-a-half years) and Goodman's would have been 188 to 235 months (roughly, fifteen-and-a-half to nineteen-and-a-half years). In contrast, by virtue of his plea agreement and purported "assistance," the government agreed to a sentence of 42 months (roughly, three-and-a-half years) for co-defendant Randy Evans, based on the same conduct.

6

responsibility, resulting in a total offense level of 10. At criminal history category III, her sentencing range for this conviction was 10 to 16 months. *Id.* at 30.

The court next found, based on Fisher's admission, that she had violated the conditions of supervised release in the other case. *Id.* at 38. At allocution, Fisher argued for a sentence of the shortest combined length of time for both convictions that would result in a sentence under which she would qualify for the Bureau of Prison's 500-hour intensive drug treatment program.[4] Given the court's interpretation of *Blakely*, the government sought a sentence at the higher end of the court's Guideline calculation for each conviction, that is, sixteen months for the pseudoephedrine possession and 21 months for the violation of supervised release. *Id.* at 37.

The court imposed a total sentence of incarceration of thirty-six months: twenty months for the violation of supervised release in 8:02CR268, to be served consecutively to two concurrent terms of sixteen months on each count of conviction in 8:03CR366. *Id.* at 39. The court made it clear that both sentences were to be considered together, stating "for the record that Ms. Fisher's consecutive sentence for the supervised release and for this sentence need to be viewed as one and if either sentence is changed, then the sentence that has been imposed does not form the basis of my decision . . . if one or both of these cases get reversed . . . I will reconsider my sentence based on the total sentence that is imposed on this defendant." *Id.* at 42. The court ordered the twenty-month sentence for the supervised release violation to be served first and also imposed a three-year period of supervised release following the term of incarceration on this conviction. *Id.* at 39.

---

[4]In the court's experience, the program is generally available only to those serving sentences longer than two years.

7

Scott Goodman was later sentenced to twelve months and one day. *See* Filing No. 124, Scott Goodman Judgment. Randy Evans was sentenced to 42 months, pursuant to the binding terms of the Fed. R. Crim. P. 11 (c)(1)(C) plea agreement. Filing No. 78, Evans Plea Agr.; Randy Evans Judgment. *Id.* No motion for a reduction of Evans's sentence for substantial assistance was ever filed. Evans did not appeal his sentence. Fisher and Goodman appealed their sentences and the sentences were reversed and remanded for resentencing in conformity with existing post-*Booker* jurisprudence. Filing No. 169, Opinion at 2 (8th Cir. Mar. 21, 2006) (per curiam).

B. Resentencing

The probation office has prepared updated PSRs for the resentencing. Fisher's updated PSR establishes that she has fully served the previously-imposed sentences of incarceration for both cases. She served part of her sentence at a halfway house and then at a three-quarter house and fulfilled all of the requirements of the facilities. She participated in and successfully completed the 500-hour intensive drug treatment program at the Bureau of Prisons. She also obtained her GED while in prison. Since her release from confinement, she has satisfied all conditions of supervised release and has reported for and tested clean on all drug tests.

Fisher had earlier lost custody of both her son, now 13, and her daughter, now 5. Fisher's parental rights to her daughter were terminated and the decision was recently affirmed in Iowa courts. Fisher and co-defendant Goodman were married in June 2004. Both are employed. Fisher's wages are being garnished in the amount of $400 per month to satisfy child support obligations. She is presently attempting to reestablish a relationship with her son. Also, the original PSR, updated PSR, and other information furnished to the court show that Fisher had completed only eighth grade before obtaining her GED while in prison. Fisher was raised in a family of methamphetamine users; both of her parents

8

were addicts. She was diagnosed as addicted to methamphetamine in 2004 and was recently diagnosed as bipolar.

In the updated PSR, the probation office again finds that Fisher's Guideline base offense level should be 30, based on a quantity that converts to 42 grams of actual methamphetamine. It finds that a three-level reduction for acceptance of responsibility is warranted. No adjustment for role in the offense is applied. Fisher's criminal history category is recalculated as category IV, based on the assessment of 3 criminal history points, instead of the one point assessed in Fisher's 2004 PSR, for the conviction that involved the violation of supervised release. The sentencing range based on offense level 27 at criminal history category IV is 100 to 125 months.

Fisher objected to the updated PSR and moved for downward departure or deviation from the Guidelines. Filing Nos. 182 & 183. She challenges the PSR's quantity calculation and seeks a minor-role adjustment  *Id.*  At the resentencing hearing, the government stipulated to a quantity that results in base offense level 26. It also moved for a three-level reduction for acceptance of responsibility. The government has abandoned its earlier position that a weapon enhancement or an upward adjustment for role in the offense should be applied, but it opposes any downward adjustment for Fisher's role and objects to any downward departure. The government concedes that it will no longer rely on the statements of Randy Evans to establish either the drug quantity or Fisher's role in the offense.

II. DISCUSSION

A. Law

Under *Booker*, the Guidelines are no longer a mandatory regime. *United States v. Gall,* 446 F.3d 884, 888 (8th Cir. 2006). "Instead, the district court must take the advisory guidelines into account together with other sentencing factors enumerated in 18 U.S.C. §

9

3553(a)." *Id.* After *Booker,* there are essentially three steps to determining an appropriate sentence: first, the district court should determine the applicable sentencing Guidelines range without consideration of any Guidelines departure factors; second, the district court, where appropriate, should consider the departure provisions in the Guidelines, and the resulting range is the advisory Guidelines range; third, the court should consider the rest of the statutory sentencing factors under 18 U.S.C. § 3553 to determine whether to impose the Guidelines sentence, as ascertained in the prior steps, or a nonguidelines sentence driven by the other statutory considerations. *United States v. Sitting Bear,* 436 F.3d 929, 934-35 (8th Cir. 2006).

The appropriate sentencing range under the Guidelines thus remains an important sentencing factor. *United States v. Haack,* 403 F.3d 997, 1002–03 (8th Cir.), *cert. denied*, 126 S. Ct. 276 (2005); *see also United States v. Mashek*, 406 F.3d 1012, 1016 (8th Cir. 2005) (stating that the Guidelines range is the critical starting point in imposing a sentence). Post-*Booker*, it is necessary for sentencing courts to calculate the applicable advisory Guideline range, including any traditional departures or reductions, and use that range as one of the factors under § 3553(a) to determine an overall, reasonable sentence. *United States v. Kiertzner*, 460 F.3d 988, 989 (8th Cir. 2006); *United States v. Mathijssen*, 406 F.3d 496, 498 (8th Cir. 2005) (noting that the district court must continue to determine the appropriate Guidelines sentencing range, as it did pre-*Booker*, before considering the other factors in 18 U.S.C. § 3553(a)).

Pre-*Booker* caselaw provides that "in considering departure, a district court must decide whether the Sentencing Commission has forbidden, encouraged, or discouraged a departure based on a certain feature." *Koon v. United States,* 518 U.S. 81, 95-96 (1996); U.S.S.G. § 5K2.1-21(enumerating encouraged factors). If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not

already take it into account. *United States v. Lightall*, 389 F.3d 791, 796 (8th Cir. 2004). The Guidelines expressly prohibit departures based on certain factors and discourage departures in consideration of other factors. *Compare* U.S.S.G. § 5H1.10 (prohibiting consideration of race, sex, national origin, or creed) *with* § 5H1.6 (discouraging consideration of family ties and responsibilities). Discouraged factors or encouraged factors already taken into account by the Guidelines can be the basis for a departure "if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Lightall,* 389 F.3d at 796. Thus, pre-*Booker*, a district court could grant a downward departure pursuant to § 5K2.0 if it determined that a mitigating circumstance, either in kind or to a degree, was not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines and the case falls outside the heartland of cases covered by the Guidelines. *United States v. Bueno*, 443 F.3d 1017, 1024 (8th Cir. 2006); *United States v. Hadash,* 408 F.3d 1080, 1083 (8th Cir. 2005) (holding, post-*Booker,* that a district court can depart without abusing its discretion if the case falls outside the heartland of cases in the Guideline at issue). Because the Sentencing Commission accounted for ordinary post-offense rehabilitation in providing an adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, a defendant's rehabilitation must be exceptional enough to be atypical in order to warrant a departure on that basis. *See United States v. Rogers*, 400 F.3d 640 (8th Cir. 2005), *cert. denied,* 126 S. Ct. 1020 (2006).

Once the district court calculates the advisory Guidelines range, it "may then impose a sentence outside the range in order to 'tailor the sentence in light of the other statutory concerns' in § 3553(a)." *United States v. Gall,* 446 F.3d at 889 (8th Cir. 2006) (*quoting United States v. Booker*, 543 U.S. 220, 245-46 (2005)). In considering whether to impose a sentence outside the Guidelines, the court considers the factors set forth in Section 3553

to determine a "reasonable sentence."  *Booker*, 543 U.S. at 245-46.  Under 18 U.S.C. § 3553(a)(2)(A) & (B), "a sentencing court shall 'impose a sentence sufficient, but not greater than necessary,' to comply with sentencing goals considering the nature and seriousness of the offense, the history and characteristics of the defendant, and the need for the sentence to provide justice, deterrence, and other goals of punishment." *United States v. Pappas,* 452 F.3d 767, 773 (8th Cir. 2006). The court must also consider the need to protect the public from further crimes of the defendant and the need to provide the defendant with necessary educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2)(C)-(D).

A sentence within the Guidelines range is presumptively reasonable, but "it does not follow that a sentence outside the guidelines range is unreasonable."  *United States v. Myers,* 439 F.3d 415, 417 (8th Cir. 2006). In certain "highly unusual circumstances," a defendant may rebut the presumption of reasonableness.  *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006).  District courts must vary from the Guidelines range where other § 3553 factors would render a sentence within the Guidelines range unreasonable. *Id.* (stating that "to consider the guidelines is not to be ruled by them").

The district court's reasonableness determination will be reviewed for abuse of discretion.  *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006).   "'Sentences varying from the guidelines range . . . are reasonable so long as the judge offers appropriate justification under the factors specified in 18 U.S.C. 3553(a).'"  *Gall,* 446 F.3d at 889 *(quoting United States v. Claiborne,* 439 F.3d 479, 480 (8th Cir. 2006), *cert. granted,* 2006 WL 2187967 (Nov. 3, 2006) (No. 06-5618)).  A nonguidelines sentence "may be unreasonable if a sentencing court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only appropriate factors but nevertheless commits a clear error of judgment

by arriving at a sentence that lies outside the limited range of choice dictated by the facts of the case." *Haack*, 403 F.3d at 1004.

The farther the district court varies from the presumptively reasonable Guidelines range, the more compelling the justification based on the § 3553(a) factors must be.[5] *Gall,* 446 F.3d at 889; *see also United States v. Larrabee*, 436 F.3d 890, 892 (8th Cir. 2006) (noting that as the size of a variance from the advisory Guidelines sentence grows, so too must the reasons that warrant it).

Factors that were discouraged or prohibited departure factors under the mandatory Guidelines may be considered in applying the § 3553(a) factors under *Booker*. *United States v. Lazenby*, 439 F.3d at 933 (8th Cir. 2006); *United States v. Robinson,* 454 F.3d 839, 842 (8th Cir. 2006) (recognizing that "pre-*Booker* departures and post-*Booker* variances are not the same" and that there may be "cases that would not justify a departure under the Guidelines but which are appropriate for a variance" as well as "cases in which a combination of a Guidelines departure and other § 3553(a) factors may produce a lower reasonable sentence than a departure alone"). Also, rehabilitation may be entitled to some weight in this analysis as long as it does not "trump all the other considerations listed in § 3553(a)." *Medearis,* 451 F.3d at 921; *but see Robinson,* 454 F.3d at 842-43 (noting that, even in cases where a rehabilitation is dramatic and hopefully permanent, a district court cannot place too much emphasis on that fact).

One of the highly unusual circumstances that will support a nonguidelines sentence is the existence of unwarranted sentence disparities between defendants who have been

---

[5] A fifty-percent increase from the Guidelines sentencing range is characterized as extraordinary. *United States v. Meyer,* 452 F.3d 998, 1001 (8th Cir. 2006); *see also United States v. Bryant,* 446 F.3d 1317, 1319-20 (8th Cir. 2006) (characterizing a fifty-seven percent variance as extraordinary); *Larrabee,* 436 F.3d at 892-93 (fifty-four percent variance is extraordinary). The United States Supreme Court has granted certiorari on the issue of whether it is "consistent with *United States v. Booker* to require that a sentence which constitutes a substantial variance from the Guidelines be justified by extraordinary circumstances." *See Claiborne v. United States*, 2006 WL 2187967 (Nov. 3, 2006) (No. 06-5618).

13

found guilty of similar conduct.  *See United States v. Krutsinger,* 449 F.3d 827, 830 (8th Cir. 2006) (recognizing that "'there may be situations where sentencing factors may be so complex, or other § 3553(a) factors may so predominate, that the determination of a precise sentencing range may not be necessary or practical'") (*quoting Haack*, 943 F.3d at 1003)); *Lazenby,* 439 F.3d at 933 (noting that *Booker* gives district courts the discretion to cure an injustice such as that caused by co-defendant stipulations to differing quantities of drugs that are not supported by the facts).  Also, similarly-situated or nearly-identical individuals who commit the same crime and participate in the same conspiracy should not be subjected to widely varying sentences due to a mere "happenstance in timing" of indictments or plea agreements.  *See Krutsinger*, 449 F.3d at 830 (affirming adjustment to sentence where development of the government's case over time resulted in a longer sentence for an equally culpable or less culpable co-defendant due to varying quantity determinations).

   III.  ANALYSIS

       A.  Guidelines calculation

To determine quantity at resentencing, the government relied on pseudoephedrine found in Goodman's, Fisher's, and Evans's possession at the time of their arrests.  It disavowed reliance on any purported statements of Randy Evans.  Given the government's concession that it could only prove a quantity of drugs that would result in a base offense level of 26, the court finds that Fisher's base offense level is 26.  Also, the court will grant the government's motion for a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(b).

The court finds that the evidence presented to the court shows that Fisher played a minor role in the offense.  Without the statements of Randy Evans, the evidence shows only that Fisher and Goodman shoplifted pseudoephedrine and conspired with each other

and Evans to do so. There is no evidence that Fisher either manufactured or trafficked in methamphetamine. Fisher's arguably equally culpable, or more culpable, co-defendant Randy Evans was afforded the minor role adjustment as part of his negotiated plea agreement. There is no evidence that Fisher was any more involved in the enterprise than Evans. Accordingly, the court finds Fisher's adjusted offense level under the Guidelines is 21.

The court sustains Fisher's objection to the calculation of her criminal history category. The court finds that Fisher should not be assessed 3 criminal history points by virtue of her twenty-month conviction for the violation of supervised release in the other case. The conduct underlying that conviction is the same conduct involved in this case. Accordingly, Fisher's criminal history category will remain III. Her resulting sentencing range is 46 to 57 months.

Fisher moves for a downward departure from that range by reason of her extraordinary rehabilitation under U.S.S.G. § 5K2.20 and because the circumstances of the case are such that it is outside the heartland under U.S.S.G. § 5K2.0. Post-offense rehabilitation must be exceptional and atypical in order to warrant a departure. The court finds that although Fisher's recovery and rehabilitation are admirable and, in the court's experience, unusual, her efforts at rehabilitation are not exceptional enough to warrant a departure under the Guidelines for that reason alone. However, as discussed further below in connection with a variance from the Guideline range, the court finds the circumstances of the case, taken together, are sufficiently unusual to take it outside the heartland of cases contemplated by the Sentencing Commission in formulating the Guidelines. The court thus finds Fisher is entitled to a downward departure under U.S.S.G. § 5K2.0. The court finds that a downward departure from the bottom of the Guideline range of 46 months to a range of 36 months, or to the equivalent of the time served on this

and the underlying supervised release violation, is sufficient to fulfill sentencing objectives in this case.

      B.  Section 3553(a) factors

To determine a reasonable sentence, the court must first consider the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a)(2)(A).  Fisher entered a plea of guilty to obtaining pseudoephedrine knowing that it would be used to manufacture methamphetamine.  There is no evidence that Fisher was anything but a small player in any methamphetamine manufacturing enterprise.  Most evidence against Fisher came from Randy Evans, whose credibility has since been discredited.  Additionally, with respect to the nature of the crime, the court notes, that Fisher's conduct, though undoubtedly criminal, was a step removed from the actual manufacturing of or trafficking in methamphetamine.  Procuring precursor chemicals, though a necessary step in manufacture, is less serious than the actual manufacture and sale of methamphetamine.

Further, the court considers Fisher's rehabilitation to be relevant to its determination as part of the defendant's history and characteristics.  Fisher was raised in an extremely dysfunctional environment and has overcome significant obstacles.  She is now married and employed.  She has shown considerable determination in the pursuit of a GED and in her commitment to recovery from her addiction.  She has paid child support since her release from incarceration. In consideration of the characteristics of the defendant and the nature of the offense, the court finds that a sentence of 36 months, or time served, is reasonable in this case.

With respect to the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, the court notes that defendant has already served a significant amount of prison time.  As a consequence of

her offense, she has also suffered the drastic and permanent sanction of the termination of her parental rights to her daughter. The combination of her completed period of incarceration and the loss of her parental rights provides just punishment for the offense and reflects an appreciation of the seriousness of the offense. The court will also extend the length of Fisher's period of supervised release to three years from the date of her resentencing. Fisher's supervised release is conditioned on continued sobriety and follow-up of drug treatment. Strictly conditioned supervised release, together with the term of incarceration that Fisher has served and the prospect of loss of parental rights, will deter others from such conduct.

In light of Fisher's demonstrated ongoing recovery and rehabilitation, maintenance of employment, payment of child support obligations, and stable marital relationship, there appears to be little need to protect the public from any future crimes. Nevertheless, the public's interest in being free from any future crimes will be protected by the court's ability to incarcerate Fisher should she violate the conditions of supervised release.

The court also considers the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the United States Sentencing Guidelines, and any policy statements promulgated thereto. 18 U.S.C. § 3553(a)(3)-(4); *Booker*, 543 U.S. at 259-60. As discussed above, the court has calculated Fisher's Guideline sentence and has used that advisory sentence as a reasonable starting point for its sentencing analysis.

Importantly, the court considers the need to avoid sentencing disparity between defendants who have committed similar crimes. Randy Evans, by virtue of his plea agreement, was sentenced to only 42 months' incarceration. Circumstances now reveal that Evans was at least as culpable, if not more culpable, than Fisher and Goodman. A sentence of thirty-six months for Fisher is in line with both co-defendants' sentences, in

17

terms of their differing criminal histories and varying levels of culpability.  Accordingly, the court finds a sentence of time served, together with a period of three years of supervised release from the date of the resentencing, will adequately address the sentencing objectives outlined in Section 3553.  Fisher has shown the court that she can be a functioning member of society and the court sees no benefit to any further incarceration.

This case, because of its timing and procedural posture, illustrates the governmental overreaching that could have resulted in a miscarriage of justice.  If *Blakely* had not been decided and the court had adopted the findings in the 2004 PSRs under the then-mandatory Guidelines, Fisher could have been assigned a quantity of pseudoephedrine that would have resulted in a base offense level of at least 32.  In addition to the pseudoephedrine found in the three defendants' possession when they were arrested, the government argued that Fisher should be held responsible for twice that amount based only on the hearsay statements of co-defendant Randy Evans.  The government then asserted that her offense level, already based on the doubled quantity, should have been increased by four additional levels for her role in the offense and her imputed constructive possession of Goodman's weapon.  The enhancements were also based on nothing more than the dubious, uncorroborated statements of Randy Evans.  The government apparently lost confidence in the credibility of Randy Evans.  It never moved for a reduction in his sentence for substantial assistance.  The government's position in 2004 was premised on information it now considers unreliable.  Had the court adopted the government's position in 2004, Fisher would have been exposed to a minimum sentence of almost twenty years.[6]

Instead, while Fisher's sentence was on appeal, the government backed away from its position.  It abandoned its reliance on Randy Evans, leaving it with little or no evidence

---

[6]The ratio between Fisher's arguable exposure in 2004 (over 235 months) and the sentence she is presently receiving (36 months) approaches, if not surpasses, the "tail-wagging-dog" threshold necessary to establish a due process violation.

18

of any serious criminal wrongdoing by Fisher beyond the possession of precursor chemicals.[7]  In the intervening years between Randy Evans's inculpation of Fisher and Goodman as the organizers of a methamphetamine-manufacturing enterprise, it has become clear that it is equally likely that Randy Evans himself was the mastermind and that Fisher and Goodman were minor, if not minimal, players.  In contrast to the scenario that the government presented in 2004—that Goodman and Fisher organized and ran a methamphetamine manufacturing and distribution enterprise and used guns to intimidate customers and co-conspirators—the court is presented on remand with nothing more than two methamphetamine addicts who procured relatively small quantities of a precursor chemical, then commonly available in most stores, in exchange for a small sum of money. The court has not been presented with evidence in this case that would support anything near the sentence of close to twenty years that was urged by the government in 2004.

An amended judgment and commitment and statement of reasons in accordance with this sentencing memorandum will issue this date.

DATED this 22nd day of November, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
Chief U.S. District Court Judge

---

[7] This reveals the infirmity of unquestioning reliance on dubious and self-serving statements of either informants, cooperating witnesses, or co-conspirators to establish criteria crucial to sentencing.  Generally, the statements attributed to an informant are hearsay several-fold:  first related to law enforcement, then to a prosecutor, then to a probation officer and then to the court.  There is no indica of the reliability of these statements.  The statements are inherently suspect since they are usually made either in the hope or promise of a government motion for departure for substantial assistance.